1

2

3

4

5

6

7

8

9

10

11

12

13                    **UNITED STATES DISTRICT COURT**

14                          **DISTRICT OF NEVADA**

15

16  LAURA LEIGH,                          )         3:13-cv-00006-MMD-VPC
                                          )
17                  Plaintiff,            )
                                          )         ORDER
18  vs.                                   )
                                          )
19  KEN SALAZAR, et al.,                  )
                                          )
20                  Defendants.           )
    _____)

21

22       Before the court is plaintiff's emergency motion for a

23  temporary restraining order (#2).  Plaintiff seeks to halt a

    roundup begun this date, January 4, 2013, in the Owyhee Herd
24
    Management Area ("HMA") in the Owyhee Complex.  Plaintiff asserts
25
    that absent court action, the roundup will conclude before the next
26
    court business day, Monday, January 7, 2013.
27
         The court may issue a temporary restraining order ("TRO")
28

                                    1

1  pursuant to Federal Rule of Civil Procedure 65.  The standard for
2  issuing a TRO is "substantially identical" to the standard for
3  issuing a preliminary injunction.  *Stuhlbarg Int'l Sales Co. v.*
4  *John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  Thus,
5  in order to obtain a TRO, plaintiff must show: (1) she will
6  probably prevail on the merits; (2) she will likely suffer
7  irreparable injury if relief is denied; (3) the balance of equities
8  tips in her favor; and (4) an injunction is in the public interest.
9  *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20
10 (2008).

11    Alternatively, an injunction may issue under the "sliding
12 scale" approach if there are serious questions going to the merits
13 and the balance of hardships tips sharply in plaintiff's favor, so
14 long as plaintiff still shows a likelihood of irreparable injury
15 and that an injunction is in the public interest.  *Alliance for the*
16 *Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).
17 "Serious questions are those which cannot be resolved one way or
18 the other at the hearing on the injunction."  *Bernhardt v. Los*
19 *Angeles County*, 339 F.3d 920, 926-27 (9th Cir. 2003) (internal
20 quotation marks omitted) (citing *Republic of the Philippines v.*
21 *Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)).  They "need not
22 promise a certainty of success, nor even present a probability of
23 success, but must involve a 'fair chance of success on the
24 merits.'"  *Marcos*, 862 F.2d at 1362.

25    "An injunction is a matter of equitable discretion and is an
26 extraordinary remedy that may only be awarded upon a clear showing
27 that the plaintiff is entitled to such relief."  *Earth Island Inst.*
28 *v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (internal quotation

2

1  marks omitted).

2      Plaintiff brings her claims under the Administrative Procedure
3  Act ("APA"), 5 U.S.C. §§ 701 *et seq*.  Judicial review of
4  plaintiff's claims is governed by 5 U.S.C. § 706.

5      Under 5 U.S.C. § 706(2), the court must set aside agency
6  decisions that are "arbitrary, capricious, an abuse of discretion,
7  or otherwise not in accordance with law" or "without observance of
8  procedure required by law."  5 U.S.C. § 706(2)(A),(D).  Although
9  the review of an agency decision is "searching and careful," the
10  "arbitrary and capricious standard is narrow" and the court cannot
11  substitute its judgment for the agency.  *Ocean Advocates v. U.S.*
12  *Army Corps of Eng'rs*, 402 F.3d 846, 858 (9th Cir. 2005) (internal
13  quotation marks omitted).  "This deferential standard is designed
14  to 'ensure that the agency considered all of the relevant factors
15  and that its decision contained no 'clear error of judgment.'"
16  *Pac. Coast Fed'n of Fishermen's Ass'n, Inc. v. Nat'l Marine*
17  *Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001).  In deciding
18  whether an agency violated the arbitrary and capricious standard,
19  the court must ask whether the agency "articulated a rational
20  connection between the facts found and the choice made."  *Ariz.*
21  *Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1236
22  (9th Cir. 2001).  A decision that is "inconsistent with a statutory
23  mandate or that frustrate[s] the congressional policy underlying a
24  statute" cannot be upheld.  *Ocean Advocates*, 402 F.3d at 859.
25  Under § 706(2), the court has the authority to enjoin agency action
26  that is not in accordance with law.

27      Under the Wild Free-Roaming Horse and Burros Act ("Wild Horse
28  Act"), 16 U.S.C. §§ 1331 *et seq.*, the Bureau of Land Management

3

1 must immediately remove "excess" wild horses, which are those that
2 "must be removed from an area in order to preserve and maintain a
3 thriving natural ecological balance and multiple-use relationship
4 in that area." 16 U.S.C. §§ 1332(f), 1333(b)(2). Excess horses
5 must be "humanely captured and removed." 16 U.S.C. § 1333
6 (b)(2)(iv)(B) "[H]umane treatment" is defined as "handling
7 compatible with animal husbandry practices accepted in the
8 veterinary community, without causing unnecessary stress or
9 suffering to a wild horse or burro." 43 C.F.R. § 4700.0-5(e).
10 Inhumane treatment is defined as "any intentional or negligent
11 action or failure to act that causes stress, injury, or undue
12 suffering to a wild horse or burro and is not compatible with
13 animal husbandry practices accepted in the veterinary community."
14 *Id.* § 4700.0-5(f).

15     In applying the factors required by *Winter*, 129 S. Ct. at 374,
16 and *Alliance for the Wild Rockies*, 632 F.3d at 1134-35, in deciding
17 whether a TRO should issue, the court finds and concludes as
18 follows:

19         1. Plaintiff has shown serious questions going to the
20 merits of her claims that the horses previously and presently being
21 rounded up in the Owyhee HMA are suffering inhumane treatment and
22 that BLM's determination that an additional 39 horses must be
23 removed from the Owyhee HMA may not be a proper excess
24 determination.

25         2. Plaintiff has demonstrated an immediate threat of
26 irreparable harm if the status quo is not maintained, that is, the
27 further inhumane treatment of the wild horses as well as a roundup
28 of horses that may not be excess.

4

1         3. The potential harm to defendants if a TRO is issued is
2   the temporary suspension of gather activities, which may be resumed
3   at a later point, particularly in light of the fact the defendants
4   allegedly took a break for the holidays from December 24, 2012, to
5   today.  The potential harm to plaintiff in the absence of the TRO
6   will be further inhumane treatment of the wild horses.  The balance
7   of hardships thus tips sharply in plaintiff's favor.

8         4. The public interest is served when actions are taken
9   to prohibit inhumane treatment of wild horses.

10       Accordingly, the plaintiff's emergency motion for a temporary
11   restraining order and for order shortening time (#2) is hereby
12   granted.  Defendants shall immediately cease and halt all wild
13   horse gathers at the Owyhee Complex, including the one currently
14   ongoing at the Owyhee HMA, and the BLM shall not transport horses
15   from the Owyhee HMA, until the court has had an opportunity to hear
16   this matter.

17       Defendants shall file opposition briefs on or before noon on
18   Tuesday, January 8, 2013.  Plaintiff shall file any reply on or
19   before noon on Wednesday, January 9, 2013.  On Monday, January 7,
20   2013, the court will issue a minute order setting a hearing for
21   next week.

22       IT IS SO ORDERED.
23       DATED: This 4th day of January, 2013.

25   _____
    UNITED STATES DISTRICT JUDGE

5