UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LAURA LEIGH,<br><br>                Plaintiff,<br><br>   v.<br><br>KEN SALAZAR, et al.,<br><br>                Defendants. | Case No. 3:13-cv-00006-MMD-VPC<br><br>ORDER REGARDING TEMPORARY RESTRAINING ORDER |

**I.   SUMMARY**

On January 4, 2013, Plaintiff filed an Emergency Motion for Temporary Restraining Order ("TRO") in this case, asking the Court to cease and halt the wild horse gather on the Owyhee heard management area ("HMA").  (Dkt. no. 2.)  The Court granted the Motion, and halted the Owyhee HMA horse gather until the Court had an opportunity to hear the matter.  (Dkt. no. 7.)  Defendant filed an Opposition to the TRO Motion. (Dkt. no. 11.) Plaintiff filed a Supplement to her TRO Motion, attaching declarations from experts regarding the treatment of the horses during the Owyhee roundup.  (Dkt. no. 10.) The Court held a hearing on the TRO on January 10, 2013. Because Plaintiff offered evidence of inhumane treatment in her Supplement, which Defendant did not have an opportunity to respond to, at the hearing the Court allowed the government to call their witness, Alan Shepphard, to put on evidence regarding the scope and nature of the roundup.

## II. BACKGROUND

Plaintiff sought an emergency injunction to halt the gather and removal of 39 wild horses from an HMA in northern Nevada, known as the Owyhee Complex. In her TRO Motion, Plaintiff challenges the Bureau of Land Management's ("BLM") authority to conduct such a roundup. In her Complaint and Supplement to the TRO Motion, Plaintiff also alleges that the manner in which BLM and its contractor are conducting the roundup is inhumane and in violation of federal regulations dictating that wild horse roundups must be conducted in a humane fashion. *See* 16 U.S.C. § 1333 (b)(2)(iv)(B); 43 C.F.R. § 4700.0-5(e)-(f) (*infra*).

## III. LEGAL STANDARD

### A. Temporary Restraining Order

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F. 3d 832 n.7 (9th Cir. 2001). Further, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

A temporary restraining order may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the

public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The Ninth Circuit has held that " 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

**B.     Applicable Law**

Plaintiff brings her claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq*.  Judicial review of plaintiff's claims is governed by 5 U.S.C. § 706.

Under 5 U.S.C. § 706(2), the court must set aside agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A),(D). Although the review of an agency decision is "searching and careful," the "arbitrary and capricious standard is narrow" and the court cannot substitute its judgment for the agency. *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 858 (9th Cir. 2005) (internal quotation marks omitted). "This deferential standard is designed to 'ensure that the agency considered all of the relevant factors and that its decision contained no 'clear error of judgment.'" *Pac. Coast Fed'n of Fishermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001). In deciding whether an agency violated the arbitrary and capricious standard, the court must ask whether the agency "articulated a rational connection between the facts found and the choice made." *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1236 (9th Cir. 2001). A decision that is "inconsistent with a statutory mandate or that frustrate[s] the congressional policy underlying a statute" cannot be upheld. *Ocean Advocates*, 402 F.3d at 859. Under § 706(2), the court has the authority to enjoin agency action that is not in accordance with law.

///

Under the Wild Free-Roaming Horse and Burros Act ("Wild Horse Act"), 16 U.S.C. §§ 1331 *et seq.*, the Bureau of Land Management must immediately remove "excess" wild horses, which are those that "must be removed from an area in order to preserve and maintain a thriving natural ecological balance and multiple-use relationship in that area." 16 U.S.C. §§ 1332(f), 1333(b)(2). Excess horses must be "humanely captured and removed." 16 U.S.C. § 1333 (b)(2)(iv)(B)  "[H]umane treatment" is defined as "handling compatible with animal husbandry practices accepted in the veterinary community, without causing unnecessary stress or suffering to a wild horse or burro." 43 C.F.R. § 4700.0-5(e). Inhumane treatment is defined as "any intentional or negligent action or failure to act that causes stress, injury, or undue suffering to a wild horse or burro and is not compatible with animal husbandry practices accepted in the veterinary community." *Id.* § 4700.0-5(f).

## IV. FINDINGS AND CONCLUSIONS

The Court has considered the TRO Motion and Supplement, the Opposition, the accompanying declarations and affidavits, as well as the parties' arguments at the January 10, 2013, hearing and the evidentiary portion of that hearing. The Court hereby makes the following findings and conclusions:

1. Plaintiff is unlikely to succeed on the merits of her claim that the BLM lacks authority to conduct the Owyhee HMA gather and transport of the 39 horses at issue. Defendant is likely to succeed in its argument that the gather and transport are within the BLM's statutory authority. *See* 16 U.S.C.A. § 1333(a) ("The Secretary shall manage wild free-roaming horses and burros in a manner that is designed to achieve and maintain a thriving natural ecological balance on the public lands.").

2. Plaintiff has failed to demonstrate that she will suffer irreparable harm should the TRO be lifted. Defendant has demonstrated that the gather is designed to promote the health of the wild horses in the Owyhee Complex, and to ensure the continued existence of free-ranging herds on the range.

3. The potential harm to defendants if a TRO is issued is the temporary suspension of gather activities, which costs the federal government roughly $18,000-20,000 each day. (Dkt. no. 11-6 at ¶ 18.) Plaintiff will not suffer harm should the TRO be lifted with the Court ordering BLM to conduct the gather in a humane fashion, as set forth below.

4. The public interest is served when actions are taken to achieve and maintain a thriving natural ecological balance on the public lands. Defendant's roundup of excess horses helps achieve this goal.

## V. TEMPORARY RESTRAINIG ORDER

The Injunction issued by this Court on January 4, 2013, IS HEREBY LIFTED, in accordance with the following terms:

1. Defendant may conduct the planned wild horse gather and transport at the Owyhee HMA.
2. Defendant must conduct the gather and transport in a humane fashion pursuant to 16 U.S.C. § 1333 (b)(2)(iv)(B) and 43 C.F.R. § 4700.0-5(e)-(f).
3. Defendant cannot use "hot shot"/electric prod treatment on the 14 weanlings it plans to transport.
4. Defendant cannot routinely use "hot shot"/electric prod treatment during the planned gather and transport of the adult horses. Defendant may only use such treatment as necessary to ensure the safety and security of the horses and handlers.
5. Defendant cannot conduct the gather or transport in a manner where the horses are driven through barbed wire fences.
6. Defendant must conduct the gather and transport in a manner ensuring that all foals are able to keep up with the drive, and none are left behind from the herd.

///
///

7. To the extent Defendant uses such methods, Defendant cannot conduct the gather or transport in a manner where the horses are treated with rushed and aggressive loading tactics from the trap sites into the trucks.

8. To the extent Defendant uses such methods, Defendant cannot conduct the gather or transport in a manner where the horses are rounded up from unsafe trap locations.

IT IS SO ORDERED.

DATED THIS 10th day of January 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE