DANIEL G. BOGDEN
United States Attorney
GREG ADDINGTON
Nevada Bar #6875
Assistant United States Attorney
100 West Liberty Street, Suite 600
Reno, Nevada 89501
Ph: (775) 784-5438
Fax: (775) 784-5181

ROBER G. DREHER,
Acting Assistant Attorney General
SETH M. BARSKY, Section Chief
S. JAY GOVINDAN, Assistant Section Chief
TRAVIS J. ANNATOYN, Trial Attorney
ERIK E. PETERSEN, Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
(202) 305-0339 (tel)
(202) 305-0275 (fax)

*Attorneys for Federal Defendants*

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEVADA**

| | |
|---|---|
| LAURA LEIGH,<br><br>Plaintiff,<br><br>v.<br><br>S.M.R. JEWELL, et al.,1<br><br>Defendants. | CASE NO. 3:13-cv-00006-MMD-VPC<br><br>**FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR A PRELIMINARY INJUNCTION** |

---

1 Pursuant to Fed. R. Civ. P. 25(d), Secretary Jewell is automatically substituted for her predecessor in office.

As the Court is aware, this case concerns Plaintiff's challenge to the Bureau of Land Management's ("BLM") Decision Records for gathers on the Owyhee Complex of Herd Management Areas (HMAs), which were issued under the Wild Horses and Free Roaming Burros Act, 16 U.S.C. § 1331 *et seq*, on October 18, 2012. Plaintiff's initial complaint, filed in January of this year, sought declaratory and injunctive relief as a means to remedy the Decision Records' alleged defects. Plaintiff simultaneously sought preliminary injunctive relief, challenging BLM's then-ongoing gather operations on the Little Owyhee HMA. See ECF No. 2; ECF No. 14. Those operations ceased on January 16, 2013, and a hearing on Plaintiff's motion for preliminary relief is scheduled for August 21, 2013.

On August 9 of this year, Plaintiff moved to amend her complaint with four "new" claims for relief. ECF No. 30. Simultaneously, Plaintiff once again moved for emergency relief, claiming that impending gathers on the Snowstorm Mountains HMA – part of the Owyhee Complex – would violate her First Amendment rights and would result in inhumane treatment to horses. ECF No. 31. Putting aside the merits of Plaintiff's motion to amend – and, therefore, the merits of her underlying claims – her motion for injunctive relief must fail for one simple reason: BLM currently has no plans to gather horses on or near the Snowstorm HMA. There is thus nothing for the Court to enjoin at this moment, and no possibility of irreparable harm to Plaintiff.

## BACKGROUND

Because the parties have already briefed the statutory and factual background in this case, Defendants omit a full recitation of those subjects here, and instead recount only recent developments pertinent to Plaintiff's motion. Defendants incorporate by reference the background set forth in their response to Plaintiff's motion for a preliminary injunction. See Defs.' Resp. to Pl.'s Mot. for Prelim. Injunction (ECF No. 17) at 2-7.

The subject of Plaintiff's current motion is an area known as the Dry Hill Pasture, which partially overlaps with the Snowstorm Mountains HMA ("Snowstorm") in northwest Nevada. Declaration of Melanie Mirati (Defs.' Ex. 1) ¶6.  In September of 2012, BLM surveyed Snowstorm, determining that its population of wild horses was beyond the relevant Appropriate Management Level.  Id. ¶8.  Since at least May of this year, large numbers of these horses have been congregating in the Dry Hills Pasture, which is suffering from an extended period of severe drought.  Id. ¶¶8,12.  The extended drought has sharply reduced amounts of available water and forage, which are currently insufficient to support the area's population of wild horses.  Id. ¶¶8-10.  To prevent the death of these animals, BLM has delivered water five days per week for three consecutive months – at the rate of 25,000 gallons per week –to the Dry Hills Pasture.  Similar hauling occurred throughout the summer and fall of 2012.  Id. ¶10.

As the periods of delivery imply, hauling water is essentially a labor-intensive stopgap measure for preventing catastrophic horse mortality.  Id. ¶12.  In an effort to better stabilize the wild horse population near Snowstorm, BLM has at times contemplated an emergency gather in the area.  Id.  Unlike the helicopter gather at issue in Plaintiff's initial motion for emergency relief, any emergency gather in Snowstorm would proceed, if at all possible, by bait and water trapping.[2]  Id. ¶13.  Moreover, any emergency gather would specifically address the drought conditions now prevailing in and near the Snowstorm HMA.  For that reason, BLM anticipates

---

[2] Water or bait trapping is a method by which BLM gathers wild horses without the use of helicopters.  Prior to any gather, portable panels are erected around an existing water source or around a stationary water or bait source.  The portable panels allow wild horses to move freely in and out of the area over a period of time until they have adjusted to it.  When the wild horses fully adapt to the area, gate system is erected and gathering begins.  This gradual acclimatization of the horses, and indirect trapping without the presence of humans during the capture process, creates a low stress gather method.  While bait trapping is not suitable for the removal of excess horses over large areas, it can be effective in specific areas where horses are concentrated and where the lack of forage or water makes bait trapping a viable technique.

that any emergency gather would not proceed under the Decision Records at issue in this case, but under a distinct Decision Record for an emergency gather. Id. ¶15.

An emergency gather near Snowstorm was initially planned for early August. Id. ¶12. In mid-July, BLM issued a press release listing Snowstorm as one of several HMAs where emergency gathers were contemplated. Id. ¶12. The release also noted that the gather schedule was "subject to change." Pl.'s Ex. 2 at 1. In further anticipation of an emergency gather on Snowstorm, BLM began preliminary, non-gather operations near the Dry Hills Pasture, including erection of barriers designed to acclimate horses to materials used in water and bait trapping. Defs.' Ex. 1 ¶14. BLM also issued a task order for an emergency gather near Snowstorm, and held tours of drought stricken areas for interested members of the public. Id. Plaintiff attended at least one of these tours. Id. ¶12.

Circumstances changed shortly thereafter. No later than August 3, BLM determined that, for several reasons, the agency may be unable to authorize any emergency gathers on or near Snowstorm for some time. Id. ¶17. In particular, nationwide holding capacity for removed wild horses is extremely low. Id. Moreover, widespread drought across Nevada and the surrounding region has increased the necessity of emergency gathers nationwide. Id. The acute excess of wild horses, in conjunction with limited holding capacity, led BLM to abandon plans to authorize emergency gather at Snowstorm in early August. On August 3, therefore, BLM ceased all preliminary, non-gather activities on the Dry Hills Pasture. Id. ¶18. On August 12, BLM suspended the task order for an emergency gather on the Snowstorm HMA. Id.

As of this filing, there are no emergency gathers planned or authorized on or near the Snowstorm HMA. Id. ¶18. No such gathers will be authorized until BLM further determines how best to address excess wild horse population in the face of widespread drought, limited

DEFS.' OPPOSITION TO PL.'S MOT.   4   CASE NO. 3: 13-cv-00006-MMD-VPC

holding capacity, and budget constraints.  Moreover, BLM has issued no Decision Record authorizing and outlining how any emergency gather on Snowstorm would proceed.  Such a decision would precede any such emergency gather activities and would be posted on BLM's website in conjunction with a press release.  If <u>any</u> gather on or near Snowstorm is authorized this year, Defendants will promptly notify the Court and Plaintiff.

## STANDARD OF REVIEW

When considering whether to grant an application for a temporary restraining order, the Court must examine four factors: (1) whether Plaintiff is likely to succeed on the merits; (2) whether Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) whether the balance of equities tips in Plaintiff's favor; and (4) whether the public interest would be served by issuance of the temporary restraining order.  See <u>Winter v. Natural Res. Def. Council</u>, 555 U.S. 7, 20 (2008) (addressing the factors in granting preliminary injunctions).  In this circuit, the standard for granting a preliminary injunction and the standard for granting a temporary restraining order are the same.  See <u>Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.</u>, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical."); <u>see also</u> <u>Winch v. Lifepoint RC. Inc.</u>, No. 3:10-CV-00061-LRH-RAM, 2010 WL 428918, at *1 (D. Nev. Feb. 1, 2010) ("The same legal standard applies to temporary restraining orders and preliminary injunctions sought pursuant to Federal Rule of Civil Procedure 65") (citation omitted).  In light of the Supreme Court's decision in <u>Winter</u>, courts must consider all four factors governing preliminary relief, <u>see</u> <u>Sierra Forest Legacy v. Rey</u>, 577 F.3d 1015, 1019 (9th Cir. 2009) (finding that the district court erred in granting a preliminary injunction because it failed to assess the non-merits factors – irreparable harm, balancing of equities, and the public interest – under the *Winter* standard), and may not issue an injunction based on the mere possibility that there will be

irreparable injury, see Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (holding that plaintiff must show that irreparable injury is likely).

**ARGUMENT**

The most salient fact before the Court is this: the agency action challenged in Plaintiff's motion – an emergency gather near Snowstorm – has not been authorized or definitively planned in a Record of Decision, much less scheduled.  Indeed, it is entirely possible, perhaps even likely, that the gather will never take place.  In the absence of any definitive plans to gather – much less a Decision Record explaining the gather's rationale and design – Plaintiff cannot demonstrate any likelihood of irreparable harm.  Defendants respectfully submit that the Court should deny Plaintiff's motion on these grounds alone, as Plaintiff's "anticipatory" challenge is pre-mature.

Insofar as the Court determines that the issue of irreparable harm is not dispositive, Defendants respectfully request that the Court deny Plaintiff's motion without prejudice on the grounds that the motion seeks relief for claims that are not before the Court.  Plaintiff's motion for emergency relief is premised on her motion to amend, but Defendants have not yet filed any response to that motion.  Any consideration of the merits of Plaintiff's claim would therefore be premature.[3]  See Leigh v. Jewell, No. 11-608, ECF No. 98 (D. Nev. July 8, 2013) (denying

---

[3] Although Defendants intend to file a detailed response to Plaintiff's motion to amend, it is clear at this stage that serious questions exist regarding Plaintiff's "new" claims and the Court's jurisdiction to hear those claims.  Insofar as Plaintiff challenges any emergency gathers issued under future Records of Decision, no such Records exist, and there is thus no agency action for Plaintiff to challenge, let alone the "final agency action" necessary for a Court to exercise jurisdiction under the Administrative Procedure Act.  See 5 U.S.C. § 704 (providing for review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court").  Insofar as Plaintiff challenges BLM or contractor conduct during any gathers, such conduct is not "agency action" subject to challenge at all.  Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 66 (2004) ("General deficiencies in compliance, unlike the failure to issue a ruling . . . lack the specificity requisite for agency action.").  Finally, Plaintiff has not adequately pled any First Amendment claims, at least because she has not identified any viewing restrictions at gathers related to this case.  Leigh v. Salazar, -- F.Supp. 2d --, No. 10-cv-0597, 2013 WL 3791415, *8 (D. Nev. July 19, 2013) (When considering First Amendment claims arising from conduct at prior gathers at issue in a given case, "the court is limited to determining whether the restrictions placed on Leigh

without prejudice motion for "relief based on claims that are not part of the complaint in this case").

## I. Because No Gather is Impending or Even Likely, Plaintiff Cannot Demonstrate Any Possibility of Harm

Equitable relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22 (2008) (citation omitted). To obtain such extraordinary relief, Plaintiff must establish that "irreparable injury is *likely* in the absence of an injunction." Id.; Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). By nature, irreparable harm must also be imminent harm. Associated Gen. Contractors of Cal. v. Coal. for Econ. Equity, 950 F.2d 1401, 1410 (9th Cir. 1991) (citing Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1201 (9th Cir.1980)). At bottom, a plaintiff cannot show irreparable harm where there is nothing for the court to enjoin. See, e.g., 11A C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure § 2948 ("It often has been observed that the purpose of the preliminary injunction is the preservation of the status quo and that an injunction may not issue if it would disturb the status quo") (citations omitted).

Plaintiff's new motion for emergency relief concerns only a non-existent gather near Snowstorm, and she must therefore show a likelihood of irreparable harm from that gather. See Pl.'s Br. (ECF No. 31) 2-4 (requesting relief pertaining entirely to "the newly announced Snowstorm roundups"). Plaintiff's required showing is impossible. As noted, no emergency gather has been approved, and it is entirely uncertain whether and when any emergency gathers

---

and the members of the public at [the prior gather] would be unconstitutional if the same restrictions were applied to a future gather at the same location providing the same viewing areas."). This list of defects is not exhaustive, and Defendants reserve the right to assert additional arguments when opposing Plaintiff's motion to amend.

near Snowstorm might occur. While Plaintiff may speculate about harms from any number of hypothetical gathers that may or may not come to pass at some point in the future, this type of conjecture simply does not show that irreparable harm is *likely* to occur at any point, much less imminently. See Amylin Pharms, Inc. v. Eli Lilly & Co., 456 Fed. App'x 676, 679 (9th Cir. 2011) (finding no irreparable harm where plaintiff "expected" injury "sometime within the next year").

As noted, BLM would authorize any emergency gather under a distinct Decision Record that addresses the prevailing drought conditions near Snowstorm. But even if BLM had authorized an emergency gather under the precise conditions described by Plaintiff, nothing in Plaintiff's filings would suggest irreparable harm from this type of gather. With respect to her First Amendment Claim, Plaintiff argues that "[i]mmediate irreparable harm occurs the moment [she] is precluded from observing and photographing the government's activities at wild horse traps . . . ." Pl.'s Br. 24. Assuming Plaintiff's standard is accurate – which it is not[4] – she has not met the burden she articulates: Plaintiff cannot show that she has been "precluded" from watching any Snowstorm gather, because no such gather has transpired. Nor may this Court enter any prophylactic injunction against speculative First Amendment violations of the future, as such an injunction could not possibly be narrowly tailored to redress specific harms. See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 422 F.3d 782, 799-800 (9th Cir. 2005); Leigh v. Salazar, no. 10-0597, 2013 WL 3791415, *8 (D. Nev. July 19, 2013) (limiting consideration of First Amendment claims for purposes of a preliminary injunction to *past* violations).

---

4 The public does not possess an unqualified right to observe government activities at wild horse traps under the First Amendment. Leigh v. Salazar, 2013 WL 3791415, at *8-*9, *14.

DEFS.' OPPOSITION TO PL.'S MOT.     8     CASE NO. 3: 13-cv-00006-MMD-VPC

Plaintiff also argues that she has demonstrated irreparable harm for purposes of this motion because she has a "connection" to certain herds of wild horses and is a "stakeholder" in the herds' "well being." Pl.'s Br. 25.  Similarly, Plaintiff points out that she is "concerned" about horse welfare and has visited several gather sites in the past. Id.  These allegations fail to show any irreparable harm because they do not even rise to the level of "injury in fact" for purposes of Article III standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  First, Plaintiff's general, self-proclaimed interest in the substance or legality of federal regulation is not a cognizable injury. Cf. United States v. Hays, 515 U.S. 737, 743 (1995) ("we have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power") (citations omitted).  Instead, Plaintiff must allege a "diminished ability to interact with and view wild horses and burros." In Def. of Animals v. U.S. Dep't of Interior, 808 F. Supp. 2d 1254, 1262 (E.D. Cal. 2011).  Plaintiff does not allege this diminished ability in her motion, and cannot manufacture irreparable harm merely by describing herself as a "stakeholder" in herds of wild horses.  In short, Plaintiff has not only identified a non-existent gather as the source of her alleged harms – she has failed to articulate any harms whatsoever.

## **CONCLUSION**

Because Plaintiff has not demonstrated – and cannot demonstrate – that irreparable harm will flow from a non-existent gather, Defendants respectfully request that the Court deny Plaintiff's motion.  In the alternative, Defendants respectfully request that the Court dismiss Plaintiff's motion with prejudice pending resolution of Plaintiff's motion to amend.

Dated: August 16, 2013.

Respectfully Submitted,

DANIEL G. BOGDEN
United States Attorney
GREG ADDINGTON
Nevada Bar #6875
Assistant United States Attorney
100 West Liberty Street, Suite 600
Reno, Nevada 89501
Ph: (775) 784-5438
Fax: (775) 784-5181

ROBERT G. DREHER,
Acting Assistant Attorney General
SETH M. BARSKY, Section Chief

/s/ *S. Jay Govindan*
S. JAY GOVINDAN,
Assistant Section Chief
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044-7611
Phone: (202) 305-0237
Fax: (202) 305-0275

*Attorneys for Federal Defendants*

**UNITED STATES DISTRICT COURT FOR THE**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LAURA LEIGH,<br><br>Plaintiffs,<br><br>v.<br><br>S.M.R. JEWELL, et al.,<br><br>Defendants. | CASE NO. 3:13-cv-00006-MMD-VPC<br><br>**CERTIFICATE OF SERVICE** |

I hereby certify that on August 16, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such to the attorneys of record.

                                                */s/ S. Jay Govindan*
                                                S. JAY GOVINDAN