ROBERT G. DREHER,
Acting Assistant Attorney General
SETH M. BARSKY, Section Chief
S. JAY GOVINDAN, Assistant Section Chief
TRAVIS J. ANNATOYN, Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
(202) 305-0339 (tel)
(202) 305-0275 (fax)

*Additional counsel listed in signature block*

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEVADA**

| | |
|---|---|
| LAURA LEIGH, | CASE NO. 3:13-cv-00006-MMD-VPC |
| Plaintiff, | |
| v. | **FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S THIRD MOTION FOR A PRELIMINARY INJUNCTION** |
| S.M.R. JEWELL, et al.,[1] | |
| Defendants. | |

## INTRODUCTION

Plaintiff's suit, filed in January of this year, challenges the substance and conclusions of the Bureau of Land Management's ("BLM") Decision Records for gathers on the Owyhee Complex of Herd Management Areas (HMAs). These Decisions were issued under the Wild Horses and Free Roaming Burros Act, 16 U.S.C. § 1331 *et seq*, on October 18, 2012. Plaintiff's

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Secretary Jewell is automatically substituted for her predecessor in office.

DEFS.' OPPOSITION TO PL.'S MOT.        1        CASE NO. 3: 13-cv-00006-MMD-VPC

initial complaint sought declaratory and injunctive relief as a means to remedy the Decision Records' alleged defects. Plaintiff simultaneously sought preliminary injunctive relief, challenging BLM's then-ongoing gather operations on the Little Owyhee HMA. See ECF No. 2; ECF No. 14. Those operations ceased on January 16, 2013, and a hearing on Plaintiff's motion for preliminary relief is scheduled for August 21, 2013.

In the two weeks leading up to this hearing, Plaintiff has twice moved for emergency relief. In Plaintiff's first motion, filed on August 9, 2013, Plaintiff requested that the Court enjoin a non-existent gather that, in any event, would have been unrelated to the Decision Records in this case. ECF No. 31. Plaintiff's second motion, filed just before midnight on August 14, 2013, protests a tribal roundup of non-wild horses, on non-BLM lands, conducted pursuant to an agreement between the United States Forest Service and Fort McDermitt Tribal Council. BLM has not authorized any removal of wild horses in connection with this gather.

At its heart, Plaintiff's motion alleges that non-BLM personnel have removed wild horses from public lands without the agency's permission. Assuming Plaintiff's submissions can be construed to raise the possibility of such a removal, Plaintiff would nonetheless lack a cause of action that might give rise to its motion. As explained below, nothing in the Wild Horse Act or the Administrative Procedure Act ("APA") permits a litigant to compel the BLM to seize wild horses illegally removed from public lands. Instead, such removal is a criminal offense under 13 U.S.C. § 1338. *If* anyone has acted to unlawfully remove wild horses from public land in connection with the recent gather, that offense may properly be the subject of a potential criminal indictment, not this – or any – civil action.

DEFS.' OPPOSITION TO PL.'S MOT.                    2         CASE NO. 3: 13-cv-00006-MMD-VPC

# BACKGROUND

As in their response to Plaintiff's second motion for a temporary restraining order, Defendants omit a full recitation of facts giving rise to Plaintiff's complaint, and instead recount only recent developments pertinent to Plaintiff's motion. Defendants incorporate by reference the background set forth in their response to Plaintiff's motion for a preliminary injunction. See Defs.' Resp. to Pl.'s Mot. for Prelim. Injunction (ECF No. 17) at 2-7.

The border of the Fort McDermitt Paiute and Shoshone Reservation lies along the Nevada/Oregon border, roughly 23 miles west of the Owyhee Complex of HMAs. ("Defs.' Ex. 1") ¶ 2. Plaintiff's motion concerns a gather conducted by the Fort McDermitt Tribal Council ("Tribe") in conjunction with an agreement ratified by the Tribe and United States Forest Service ("USFS"). See Pl.'s Ex. 5 ("Agreement"). Neither BLM nor any other division of the Department of the Interior was a party to this Agreement, which contemplates a tribal gather designed to collect stray, Tribe-owned horses from USFS lands.[2] Id. at 1. The Agreement between USFS and the Tribe does not authorize the removal of wild horses from public lands, nor could it, as only the Secretary of the Interior, acting through BLM, may authorize such removal. 16 U.S.C. § 1338. The agreement apparently obligates USFS to obtain "trailing" rights through BLM lands for horses involved in the gather, although there is currently no indication that that such approval was requested or obtained. Pl.'s Ex. 5 at 3. Following the gather, some horses in the Tribe's possession were apparently moved to Fallon, Nevada, for auction.

---

[2] Non-wild horses are often – but not always – identified by brands, i.e., a horse is not protected under the Wild Horses and Burros Act merely because it is unbranded. See 16 U.S.C. § 1332 (defining "wild horses" to mean all unbranded and unclaimed horses . . . on public lands of the United States") (emphasis added). See also Pl.'s Ex. 5 at 2 (obligating Tribe to "[d]etermine tribal policy on ownership of horses without brands or known owners"). The Agreement requires the Tribe to "[f]acilitate a Nevada/Oregon State brand inspection to horses can legally be transported off the reservation and legally sold." Id.

DEFS.' OPPOSITION TO PL.'S MOT.   3   CASE NO. 3: 13-cv-00006-MMD-VPC

BLM's *only* role in the tribal gather was to deploy BLM personnel in an effort to ensure that no wild horses were collected during the gather, and to direct participants in the gather to locations of domestic (i.e., non-wild) horses on BLM land.[3]  BLM did not plan or assist with the operations of the gather.  Defs.' Ex. 1 ¶ 4.  *Nor did BLM grant the Tribe permission to remove wild horses from public lands*.  Id. ¶5.  Indeed, a BLM letter issued prior to the gather indicates that BLM understood the gather to concern only the removal of tribal animals.  Defs.' Ex. 2.

## STANDARD OF REVIEW

When considering whether to grant an application for a temporary restraining order, the Court must examine four factors: (1) whether Plaintiff is likely to succeed on the merits; (2) whether Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) whether the balance of equities tips in Plaintiff's favor; and (4) whether the public interest would be served by issuance of the temporary restraining order.  See Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008) (addressing the factors in granting preliminary injunctions).  In this circuit, the standard for granting a preliminary injunction and the standard for granting a temporary restraining order are the same.  See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical."); see also Winch v. Lifepoint RC. Inc., No. 3:10-CV-00061-LRH-RAM, 2010 WL 428918, at *1 (D. Nev. Feb. 1, 2010) ("The same legal standard applies to temporary restraining orders and preliminary injunctions sought pursuant to Federal Rule of Civil Procedure 65") (citation omitted).  In light of the Supreme Court's decision in Winter, courts must consider all four factors governing preliminary relief, see Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1019 (9th Cir. 2009) (finding that the district court

---

[3] The BLM employee directing participants in the gather to locations of domestic horses is Shaney Rockefeller. Defendants anticipate filing a declaration from Ms. Rockefeller prior to hearing on this matter.

erred in granting a preliminary injunction because it failed to assess the non-merits factors – irreparable harm, balancing of equities, and the public interest – under the *Winter* standard), and may not issue an injunction based on the mere possibility that there will be irreparable injury, see Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (holding that plaintiff must show that irreparable injury is likely).

## ARGUMENT

Plaintiff's new motion suffers from a litany of defects, each of which requires that this Court deny the motion.

*First*, the allegations concerning BLM's involvement in the roundup are false. Plaintiff has provided no evidence whatsoever that wild horses are currently in Fallon, Nevada, much less that BLM officially facilitated or authorized the removal of such horses from public lands. In support of its allegations, Plaintiff has attached three declarations, none of which are relevant to Plaintiff's accusations. The declaration of Julie Barraque merely states that Ms. Barraque "believes" wild horses are present in Fallon because the horses held there look different than reservation horses she helped collect two years prior. Pl's Ex. 7. Ms. Barraque's declaration contains no references to BLM or to the gather itself. The declaration of Deinz Bolbol contains one paragraph asserting that Forest Service Representatives indicated that USFS could "push" horses from BLM lands. Pl.'s Ex. 5 ¶ 2. This paragraph, which is classic hearsay within hearsay, indicates neither that the horses in question were wild horses protected by law, nor that any such horses were actually "pushed," whatever Mr. Bolbol believes that term entails. Id. Mr. Bolbol describes no firsthand knowledge of the gather itself or of the horses in Fallon. Indeed, his declaration was signed in Redwood City, California. Id. at 2. Likewise, Plaintiff's own declaration claims no firsthand knowledge of the gather or of the conditions at Fallon. Pl.'s Ex.

2. Finally, Plaintiff has attached a series of photographs without sworn declarations explaining where or when the photographs were taken. Pl.'s Ex. 1. Thus, there is simply no evidence that BLM facilitated or approved removal of wild horses from public lands. To the contrary, BLM acted to prevent any such removal. Defs.' Ex. 1

*Second*, Plaintiff's newly requested relief is not tethered to any claim currently before the Court. Plaintiff's complaint challenges the Records of Decision for gathers taking place on the Owyhee complex of HMAs. Plaintiff's motion to amend her complaint – to which Defendants have not yet responded – seeks to add claims for relief pertaining to a non-existent emergency gather near the Snowstorm HMA. In the instant motion, Plaintiff fails to explain how any newly alleged violations of the Wild Horses and Free Roaming Burros Act or the APA correspond to either the subject of her complaint (the Records of Decision issued on October 12, 2013) or her motion to amend (the non-existent Snowstorm gather). There is no indication that Plaintiff's factual allegations or legal theories have any nexus to the subject of this case, and her motion is therefore not properly before the Court.

*Third*, even if the subject of Plaintiff's new motion had been properly raised through (presumably) a second motion to amend Plaintiff's complaint, this Court would lack jurisdiction to hear Plaintiff's claims. Plaintiff asserts jurisdiction under the APA, which permits review of final agency action and action unlawfully withheld. 5 U.S.C. §§ 702, 706. The APA defines "agency action" as including "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

Here, BLM has neither acted nor failed to act in a manner required by the Wild Horses and Free Roaming Burros Act. BLM has not authorized the removal of wild horses from public land in connection with this gather: the agency's *only* role in connection with the roundup was to

dispatch employees as a means ensure that no wild horses were removed from public land. Defs.' Ex. 1. This precautionary gesture is plainly not an order, license, sanction, relief, or the equivalent thereof. Plaintiff can point to no such action, because none exists.

Nor has BLM failed to act in this case. "Failure to act" claims under the APA are in the nature of mandamus, and Plaintiff must therefore identify a "specific, unequivocal command" that the agency was required to obey. Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63 (2004). Plaintiff has identified no such duty for purposes of this case, and none exists. The powers and duties of BLM under the Wild Horses and Burros Act are clearly set forth in 16 U.S.C. § 1333. BLM's primary duty under the Act is to "manage" population levels of wild horses, although the agency is also directed to study wild horses and, in certain circumstances, to sell the animals. Id. Nothing in the Act commands BLM to take affirmative measures preventing illegal removal of wild horses from public lands, much less to stop all such removal. Plaintiff can therefore point to no "specific, unequivocal command," as she must to establish jurisdiction under the APA.

*Fourth*, Plaintiff has not demonstrated standing to seek her requested relief. Plaintiff argues that she has standing to seek this relief by means of (1) quoting the APA, (2) noting that "the court has recognized Ms. Leigh's standing previously in other cases," and (3) requesting that the Court, "for brevity and time," "incorporate" Ms. Leigh's standing from her motion filed August 9, 2013. ECF No. 36 at 8. The burden to show standing, however, is an "irreducible" requirement of Article III of the United States Constitution, and may not be jettisoned at Plaintiff's convenience. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). As in any wild horse case, Plaintiff must show that – *in this particular instance* – she has suffered or will imminently suffer an injury in fact by demonstrating, for example, a "diminished ability to

interact with and view wild horses and burros." In Def. of Animals v. U.S. Dep't of Interior, 808 F. Supp. 2d 1254, 1262 (E.D. Cal. 2011).  Here, Plaintiff has made no attempt to demonstrate that she has suffered a recreational or aesthetic harm as a result of any party's actions, much less the actions of named Defendants in this case.  In particular, Plaintiff has articulated no connections between personal injury and horses roaming dozens of miles from the Owyhee Complex.  Assuming for the sake of argument that Plaintiff had demonstrated standing to seek the relief she requests in her second motion for a temporary restraining order, there is no reason whatsoever to believe that standing for purposes of an (imaginary) gather on the Snowstorm HMA would suffice for purposes of demonstrating standing here.  Similarly, Plaintiff has made no effort to show why previous decisions recognizing her standing in Wild Horse Act cases should excuse her total failure to allege injury-in-fact for purposes of this motion.

*Fifth*, Plaintiff has not demonstrated a likelihood of irreparable harm.  See Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008).  Underscoring the hollowness of Plaintiff's motion, Plaintiff has evidently duplicated, verbatim, her arguments concerning irreparable harm from the motion she filed last Friday.  Compare ECF No. 36 at 9-10 with ECF No. 31 at 24-25.  Thus, Plaintiff's allegations of irreparable harm for purposes of *this* motion include a reference to First Amendment claims that appear nowhere else in the motion or its supporting filings.  As Defendants explained in their response to Plaintiff's second motion for a temporary restraining order, these arguments do not even approach the necessary showing of irreparable harm in the context of *that* motion.  See ECF No. 45 at 7-9.  Defendants incorporate those arguments by reference, and note that Plaintiff's claims are even more misplaced for purposes of this motion, as they do not even purport to show harm arising from the tribal gather at issue.

*Sixth*, Plaintiff's requested relief is overbroad. Assuming that the Court could somehow exercise jurisdiction over this dispute, that Plaintiff had standing to seek relief, and that BLM had authorized the removal of wild horses in a manner contrary to the Wild Horses and Free Roaming Burros Act, Plaintiff's "relief" is not narrowly tailored. See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 422 F.3d 782, 799-800 (9th Cir. 2005). Indeed, it is not tailored at all. Presumably, the remedy for unlawful management of wild horses would encompass declaratory relief recognizing the defects in BLM's action and, in special circumstances, an order commanding BLM to refrain from taking such action in the future. Plaintiff's motion, however, asks the BLM to: halt a *private* sale of horses; seize and conduct genetic testing on *all* wild horses currently in private hands (i.e., not merely horses that were allegedly removed by the Tribe during the recent gather); conduct some form of detailed accounting on horses in the Owyhee Complex; sell horses that this accounting reveals to be genetically distinct from wild horses; and enjoin sovereign entities not currently before the Court from removing wild horses from public land, an act which is already a criminal offense under 16 U.S.C. § 1338. Nothing in the Wild Horses and Burros Act grants BLM authority to take the actions requested by Plaintiff, nor does BLM posses the capacity to search, seize, and hold private property. Indeed, such an injunction may well exceed the Court's equitable authority. The vast gulf between Plaintiff's requested relief and her allegations has no basis in law or fact, and is, therefore, reflective of her motion as a whole.

## **CONCLUSION**

For the reasons stated above, Defendants respectfully request that the Court deny Plaintiff's third motion for a temporary restraining order. If wild horses have been removed from public lands without BLM's authorization – an allegation Plaintiff supports merely with

reference to one declarant's "belief" – that act is a criminal violation of 16 U.S.C. § 1338. It is not, however, the basis for any civil suit against BLM, let alone an injunction in this particular case.

Dated: August 16, 2013

              Respectfully Submitted,

              DANIEL G. BOGDEN
              United States Attorney
              GREG ADDINGTON
              Nevada Bar #6875
              Assistant United States Attorney
              100 West Liberty Street, Suite 600
              Reno, Nevada 89501
              Ph: (775) 784-5438
              Fax: (775) 784-5181

              ROBERT G. DREHER,
              Acting Assistant Attorney General
              SETH M. BARSKY, Section Chief

              <u>/s/ *S. Jay Govindan*</u>
              S. JAY GOVINDAN,
              Assistant Section Chief
              U.S. Department of Justice
              Environment & Natural Resources Division
              Wildlife & Marine Resources Section
              Ben Franklin Station
              P.O. Box 7611
              Washington, DC 20044-7611
              Phone: (202) 305-0237
              Fax: (202) 305-0275

              *Attorneys for Federal Defendants*

**UNITED STATES DISTRICT COURT FOR THE**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LAURA LEIGH,<br><br>Plaintiffs,<br><br>v.<br><br>S.M.R. JEWELL, et al.,<br><br>Defendants. | CASE NO. 3:13-cv-00006-MMD-VPC<br><br>**CERTIFICATE OF SERVICE** |

I hereby certify that on August 16, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such to the attorneys of record.

*/s/ S. Jay Govindan*
S. JAY GOVINDAN