UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LAURA LEIGH,<br><br>    Plaintiff,<br><br>v.<br><br>KEN SALAZAR, et al.,<br><br>    Defendants. | Case No. 3:13-cv-00006-MMD-VPC<br><br>(Plf.'s Motion for Preliminary Injunction – dkt. no. 14) |

### I.  SUMMARY

Plaintiff Laura Leigh's Motion for Preliminary Injunction (dkt. no. 14) was filed before the Court's Order denying her request for a temporary restraining order and allowing Defendants to resume a gather commenced and completed in January 2013. (See dkt. no. 15.) Since then, it is apparent that the urgency of the issues raised in her Motion has dissipated. In fact, Defendants have represented, and Plaintiff does not dispute, that there is no current roundup scheduled in the management areas identified in this action. Defendants have further represented that no roundup is scheduled for the next 2-3 years. In light of the absence of any scheduled roundups, Plaintiff cannot demonstrate immediate irreparable harm to warrant the granting of the extraordinary remedy of preliminary injunctive relief. For the reasons set forth below, the Motion is denied.

## II. BACKGROUND

### A. Facts

The Owyhee Complex is comprised of five designated wild horse Herd Management Areas ("HMA"): Little Humboldt, Owyhee, Rock Creek, Little Owyhee, and Snowstorm. (*See* dkt no. 14 at 5.) The area covers 1,054,207 acres in Humboldt and Elko counties. (*See id.*) The Complex is managed by two Bureau of Land Management ("BLM") district offices: Winnemucca and Elko. (*See id.*) The HMAs are contiguous and separated only by fencing. Plaintiff claims that the BLM has admitted that horses move between these areas but that there has been no formal research into the extent of their movement. (*See id.* at 5–6).

The BLM conducted a ten-year Environmental Assessment ("EA") that was published in October 2012 covering all of the Owyhee Complex. (*See* dkt. no. 14-1.) Records of Decision ("ROD") were filed with each HMA and signed by the Winnemucca and Elko district offices of the BLM. (*See* dkt no. 14 at 5.) These RODs authorize wild horse and burro roundups for the next ten (10) years with separate plans for each HMA. (*Id.*) Plaintiff asserts that BLM employs the same leadership and supervision for all Owyhee Complex roundups. (*See* dkt. no. 1 at 3.)

The EA estimates that there are 2,267 horses living in the Owyhee Complex but that the appropriate management level ("AML") is only 621-999 horses. (*See* dkt no. 14 at 6.) The EA states that "[e]stablishing AML as a population range allows for the periodic removal of excess animals to the low range of AML and allows for subsequent population growth to the high range of AML between removals (gathers)." (*See* dkt. no. 14-1 at 4.) The first roundup within the Owyhee Complex under the current EA began on November 26, 2012, at the Little Owyhee HMA and concluded on December 19, 2012. (*See* dkt. no. 17 at 5.) Plaintiff states that approximately 819 horses were removed during this gather. (*See* dkt. no. 14 at 3.) The second phase of the roundup was scheduled to commence on January 4, 2013, and, after a brief halt, was completed in

///

January 2013. Defendants have represented that no roundup, including helicopter roundups, is scheduled in the Owyhee Complex for the next 2-3 years.

### B. Procedural History

On January 4, 2013, the same day that the roundup was meant to resume, Plaintiff Leigh filed her Complaint (dkt. no. 1) and Emergency Motion for a Temporary Restraining Order (dkt. no. 2) to enjoin its continuation. The Court granted the order the same day and set an expedited briefing schedule and a hearing date. On January 10, 2013, the Court conducted a hearing and lifted the Temporary Restraining Order, allowing the BLM to gather wild horses in the Owyhee HMA under humane conditions. (Dkt. nos. 15–16.) The same day, Plaintiff filed a Motion for Preliminary Injunction. (Dkt. no. 14.) Following several continuance requests, the last of which was denied, a hearing was held on the Motion on Wednesday, August 21, 2013. (Dkt. no. 51.)

Plaintiff Leigh makes three claims in her Motion: (1) the horses are being treated inhumanely; (2) the BLM does not have a reliable definition of when horses become overpopulated; and (3) the BLM does not adequately keep track of horse migration patterns within the Owyhee Complex in making its determination that horses are in "excess".

## III. LEGAL STANDARD

### A. Preliminary Injunction

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

///

///

**B.     Applicable Law**

Plaintiff brings her claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq. Judicial review of Plaintiff's claims is governed by 5 U.S.C. § 706.

Under 5 U.S.C. § 706(2), the court must set aside agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A),(D). Although the review of an agency decision is "searching and careful," the "arbitrary and capricious standard is narrow" and the court cannot substitute its judgment for the agency. *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 858 (9th Cir. 2005) (internal quotation marks omitted). "This deferential standard is designed to 'ensure that the agency considered all of the relevant factors and that its decision contained no 'clear error of judgment.'" *Pac. Coast Fed'n of Fishermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001). In deciding whether an agency violated the arbitrary and capricious standard, the court must ask whether the agency "articulated a rational connection between the facts found and the choice made." *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1236 (9th Cir. 2001). A decision that is "inconsistent with a statutory mandate or that frustrate[s] the congressional policy underlying a statute" cannot be upheld. *Ocean Advocates*, 402 F.3d at 859. Under § 706(2), the court has the authority to enjoin agency action that is not in accordance with law.

Under the Wild Free-Roaming Horse and Burros Act ("Wild Horse Act"), 16 U.S.C. §§ 1331 et seq., the Bureau of Land Management must immediately remove "excess" wild horses, which are those that "must be removed from an area in order to preserve and maintain a thriving natural ecological balance and multiple-use relationship in that area." 16 U.S.C. §§ 1332(f), 1333(b)(2). Excess horses must be "humanely captured and removed." 16 U.S.C. § 1333 (b)(2)(iv)(B) "[H]umane treatment" is defined as "handling compatible with animal husbandry practices accepted in the veterinary community, without causing unnecessary stress or suffering to a wild horse or burro." 43 C.F.R. §

4700.0-5(e). Inhumane treatment is defined as "any intentional or negligent action or failure to act that causes stress, injury, or undue suffering to a wild horse or burro and is not compatible with animal husbandry practices accepted in the veterinary community." *Id.* § 4700.0-5(f).

## IV. DISCUSSION

### A. Inhumane Treatment

Plaintiff alleges that BLM utilized several inhumane roundup methods during its Winter 2012 gather at the Owyhee HMA, including: (1) routine use of hotshots and use of hotshots on foals; (2) slamming gates; (3) helicopter driving into barbed wire; (4) driving in extreme cold; and (5) driving to extreme exhaustion.[1]

The Court in *Winter* held that in order to justify the grant of the "extraordinary remedy" of injunctive relief, a court must find more than a mere possibility of irreparable harm. 555 U.S. at 22. In her Motion, Plaintiff seeks to demonstrate that there is a likelihood of irreparable harm because certain inhumane tactics have been used in the past and thus they will likely be used in the future.

Plaintiff has failed to demonstrate likelihood of irreparable harm on her inhumane treatment claim. Plaintiff provides minimal evidence towards her assertion that certain types of treatment were used in past roundups and that this treatment was inhumane. However, it is unnecessary for the Court to determine at this early stage whether Plaintiff has established this past treatment because, even if Plaintiff demonstrated that these tactics were used previously and are inhumane, Plaintiff still has not demonstrated, as she is required to, that these same tactics are likely to be used in the immediate future.

As a threshold matter, the Complaint is unclear regarding which future roundups it incorporates. The Complaint specifically indicates that it is addressing the roundup

---

[1] These are the five types of treatment explicitly mentioned in Plaintiff's Motion for Preliminary Injunction. (*See* dkt no. 14 at 3.) Other forms of allegedly inhumane treatment are referenced in the exhibits attached to the Motion and the Complaint, as well as during the January 10, 2013, hearing on the Motion for a Temporary Restraining Order.

5

scheduled to resume in January 2013. (*See* dkt. no. 1 at 1 ("This complaint addresses the remaining roundups to be completed, proposed to resume January 4, 2012[2] with the removal of 50 horses from Owyhee . . . .").) However, at the August 21 hearing, Plaintiff stated that her allegations involve all future roundups at the Owyhee Complex during the period covered by the ten-year EA, not just the January 2013 roundup. While the Court is willing to construe the Complaint to incorporate roundups within the scope of the EA beyond the January 2013 gather at this early stage, the Complaint[3] only explicitly refers to helicopter roundups. For the purpose of this Order, therefore, the Court will construe the Complaint to incorporate allegations concerning the use of inhumane methods during all helicopter roundups conducted on the Owyhee Complex during the scope of the ten-year EA.

It is, however, not adequate for Plaintiff to assert that future helicopter roundups may occur. In order to obtain injunctive relief, Plaintiff must show a likelihood that there will be immediate helicopter roundups and that they will be conducted using the same methods Plaintiff seeks to enjoin in her Motion. Plaintiff has not shown that there will be an immediate helicopter roundup. Defendants state in their Response, and reiterated during the August 21 hearing, that they do not have any plans to conduct a roundup, of any kind, in the next 2-3 years. (*See* dkt. no. 17 at 7.) Plaintiff argues that Defendants could conduct a roundup at any time in the next ten years, because of the signed Records of Decision for the Elko and Winnemucca Districts (dkt. no. 18 at 2) and the determinations that the Snowstorm HMA and Rock Creek HMA are "over AML" (dkt. no.

---

[2] While the Complaint stated that the roundup was scheduled to occur on January 4, 2012, based on the date the Complaint was filed, January 4, 2013, and the facts of the case, the Court concludes that this was a typographical error and that Plaintiff intended to write January 2013.

[3] Plaintiff filed a Motion to Amend the Complaint on August 9, 2013, that would have expanded the scope of the Complaint. (Dkt. no. 30.) The Court denied the Motion to Amend during the August 21 hearing for failure to comply with Local Rule 15-1. (Dkt. no. 51.) Plaintiff filed a Second Motion to Amend the Complaint on August 22, 2013. (Dkt. no. 52.) The Court has not reached a decision on that Motion, which Defendants have not yet responded to, and thus it is not considered in this order.

14-1 at 10). While that may be the case, Plaintiff has not demonstrated that such a roundup would occur by helicopter, nor that it is likely to occur in the immediate future to warrant preliminary injunctive relief.

Plaintiff has also failed to show that, even if a helicopter roundup were to occur in the immediate future, the same methods would be used as those she alleges were used during the first phase of the Owyhee Complex roundup. Plaintiff's only allegations regarding future roundups involve sweeping, conclusory statements that she expects inhumane treatment in the future because it has occurred in the past. (*See, e.g.*, *id.* at 13 (explaining that Plaintiff Leigh has witnessed inhumane treatment in the past which "she would likely observe with ongoing Owyhee Complex roundups").)

Plaintiff has therefore not shown a likelihood of irreparable harm regarding her claims of inhumane treatment in the absence of preliminary injunctive relief. Since no roundup is scheduled for the Owyhee Complex for the next 2-3 years and the claims may be resolved on the merits by that time, Plaintiff is not entitled to preliminary injunctive relief.

### B.   Excess Horses Determination

Plaintiff's remaining claims are that BLM does not have a clear definition of "excess horses" and that they do not use a valid or reliable method for determining whether horses must be removed. The scope of Plaintiff's claim is again unclear and without any specifics as to which part of BLM's methodology is inadequate and how it should be remedied. However, the Court need not reach the merits of this claim because, for the reasons given above, Plaintiff cannot demonstrate that a helicopter roundup is likely to occur imminently to support her request for preliminary injunctive relief.

### V.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

///

determines that they do not warrant discussion as they do not affect the outcome of the Motion.

IT IS THEREFORE ORDERED that Plaintiff's Motion for a Preliminary Injunction (dkt. no. 14) is DENIED.

DATED THIS 27th day of August 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE