UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LAURA LEIGH,<br>　　　　　　Plaintiff,<br>　v.<br>KEN SALAZAR, et al.,<br>　　　　　　Defendants. | Case No. 3:13-cv-00006-MMD-VPC<br><br>ORDER<br><br>(Defs.' Partial Motion to Dismiss – dkt. no. 68) |

## I.　SUMMARY

Before the Court is Defendants' Partial Motion to Dismiss, seeking to dismiss the first, second and fourth claims for relief. (Dkt. no. 68.) For the reasons set forth below, the Motion is granted.

## II.　BACKGROUND

### A.　Facts

Plaintiff initiates this action to prevent further inhumane gathers and emergency gathers that the Bureau of Land Management ("BLM") conducted and plans to conduct on the Owyhee Complex, and to enforce Plaintiff's qualified right of access under the First Amendment to observe, document, and report on the Owyhee Complex roundups. (Dkt. no. 82 at 1-5.)

The Owyhee Complex is comprised of five designated wild horse Herd Management Areas ("HMA"): Little Humboldt, Owyhee, Rock Creek, Little Owyhee, and Snowstorm. (*Id.* at 3.) The Complex is managed by two BLM district offices: Winnemucca and Elko. (*Id.*)

The BLM has conducted roundups in the Owyhee Complex based on a ten-year Environmental Assessment ("EA") that runs from November 26, 2012, to November 25, 2022. (*Id.* at 2-3.) The EA estimates that there are 2,267 horses living in the Owyhee Complex but that the appropriate management level ("AML") is between 621 and 999 horses. (*See* dkt no. 14 at 6.) The EA states that "[e]stablishing AML as a population range allows for the periodic removal of excess animals to the low range of AML and allows for subsequent population growth up to the high range of AML between removals (gathers)." (*See* dkt. no. 14-1 at 4.) Plaintiff alleges that the EA is inadequate. (Dkt. no. 82 at 4-7, 45.)

The first roundup in the Owyhee Complex began in the Little Owyhee HMA on November 26, 2012; it concluded on December 19, 2012. (*See* dkt. no. 17 at 5.) Plaintiff states that approximately 819 horses were removed during this gather. (*See* dkt. no. 14 at 3.) A second phase of the roundup was scheduled to commence in the Owyhee HMA on January 4, 2013, and, after a brief halt, was completed in January 2013. Defendants have represented that no roundup, including helicopter roundups, is scheduled in the Owyhee Complex for the next 2 to 3 years. (*See* dkt. no. 17 at 7.)

B. **Procedural History**

On January 4, 2013, the same day that the roundup's second phase was meant to start, Plaintiff filed her Complaint (dkt. no. 1) and an Emergency Motion for a Temporary Restraining Order (dkt. no. 2) to enjoin its continuation. The Court granted the Emergency Motion the same day and set an expedited briefing schedule and a hearing date. On January 10, 2013, the Court conducted a hearing and lifted the Temporary Restraining Order, allowing the BLM to gather wild horses in the Owyhee HMA under humane conditions. (Dkt. nos. 15-16.) The same day, Plaintiff filed a Motion for Preliminary Injunction. (Dkt. no. 14.) The Court set a hearing date for the Motion for Preliminary Injunction, which the parties jointly asked to postpone multiple times. (*See* dkt. nos. 21, 25, 26.) The Motion was heard and denied on August 21, 2013 (dkt. no. 51), followed by a written order on August 27, 2013 (dkt. no. 53).

Plaintiff filed a Second Emergency Motion for a Temporary Restraining Order on August 9, 2013 (dkt. no. 31), and a Third Emergency Motion for a Temporary Restraining Order on August 14, 2013 (dkt. no. 36). The Court denied the Second Emergency Motion on August 21, 2013 (dkt. no. 51), and denied the Third Emergency Motion following a hearing on August 16, 2013 (dkt. no. 49).

Plaintiff first moved to amend the Complaint on August 9, 2013. (Dkt. no. 30.) The Court denied the Motion for failure to comply with procedural requirements and granted Plaintiff leave to file a motion that complies with Local Rule 15-1. (Dkt. no. 51.) On August 22, 2013, Plaintiff filed her Second Motion to Amend, which was granted.[1] (Dkt. no. 64.)

The SAC alleges four claims for relief. (Dkt. no. 82 at 40-49.) Defendants have moved to dismiss the first, second and fourth claims. (Dkt. no. 68.)

### III. DISCUSSION

#### A. Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible

///

---

[1] Plaintiff, however, did not file her Second Amended Complaint ("SAC") after the Court granted her Second Motion to Amend. In light of Plaintiff's now *pro se* status, the Court recently directed the court staff to file the SAC. (Dkt. no. 82.)

1  on its face." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570) (internal
2  quotation marks omitted).

3      In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to
4  apply when considering motions to dismiss. First, a district court must accept as true all
5  well-pleaded factual allegations in the complaint; however, legal conclusions are not
6  entitled to the assumption of truth. *Id.* at 679. Mere recitals of the elements of a cause of
7  action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a
8  district court must consider whether the factual allegations in the complaint allege a
9  plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's
10 complaint alleges facts that allow a court to draw a reasonable inference that the
11 defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not
12 permit the court to infer more than the mere possibility of misconduct, the complaint has
13 "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (*quoting*
14 Fed. R. Civ. P. 8(a)(2)) (internal quotation marks and alteration omitted). When the
15 claims in a complaint have not crossed the line from conceivable to plausible, the
16 complaint must be dismissed. *Twombly*, 550 U.S. at 570. A complaint must contain
17 either direct or inferential allegations concerning "all the material elements necessary to
18 sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (*quoting*
19 *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

20     The notice pleading requirements of Rule 8(a) can be violated not only "when a
21 pleading says *too little*," but also "when a pleading says *too much*." *Knapp v. Hogan*, 738
22 F.3d 1106, 1109 (9th Cir. 2013), *petition for cert. filed*, 82 U.S.L.W. 3654 (Mar. 26,
23 2014). For the claims challenged in Defendants' Motion, the SAC is prolix and thus fails
24 to provide a short and plain statement of the grounds for relief in compliance with Rule
25 8(a)(2).

26 ///
27 ///
28 ///

4

B. Discussion

1. First Claim for Relief

The first claim for relief essentially alleges that contrary to their duties under federal law, Defendants have failed to ensure that gathers and removals of excess wild horses during the Owyhee Complex roundups were conducted in a humane manner.[2] (Dkt. no. 82 at 41-42.) Plaintiff alleges that the challenged agency action is Defendants' "failure to act" as defined in 5 U.S.C. § 551(13), and that such failure was arbitrary, capricious, and not in accordance with law under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and/or (D). (*Id.* at 41.) Plaintiff seeks injunctive relief to enjoin Defendants from "allowing inhumane methods and conditions to remain in place." (*Id.* at 44.)

Defendants argue that the first claim for relief fails to state a claim because it challenges BLM's day-to-day management of gathers in the Owyhee Complex, which is not a discrete agency action subject to judicial review. Plaintiff seems to agree that the first claim "challenges the methodology of the roundup that results in inhumane action," but argues that the first claim also challenges the implementation of the flawed EA and BLM's "failure to consider certain matters before finalizing the EA." (Dkt. no. 74 at 3, 7.) Plaintiff points to allegations in the SAC relating to BLM's failure to ensure humane treatment of wild horses before finalizing the EA. (*Id.* at 3-5.) Although these allegations are incorporated by reference into the allegations supporting the first claim, the Court does not construe the first claim to be based on the EA's inadequacy.[3] As alleged,

---

[2]The SAC cites the Wild Free-Roaming Horse and Burros Act ("Wild Horse Act"), 16 U.S.C. §§ 1331-1340, and its implementing regulations, as an example of federal law that governs BLM's responsibilities to ensure the humane capture and removal of excess wild horses. (Dkt. no. 82 at 41.) Under the Wild Horse Act, BLM must immediately remove "excess animals," which are horses or burros that "must be removed from an area in order to preserve and maintain a thriving natural ecological balance and multiple-use relationship in that area." 16 U.S.C. §§ 1332(f), 1333(b)(2). Excess horses must be "humanely captured and removed." 16 U.S.C. § 1333(b)(2)(iv)(B).

[3]The Court agrees with Defendants that allegations relating to the EA support the third claim for relief. To the extent Plaintiff's first claim challenges the adequacy of the *(fn. cont…)*

1  Plaintiff's first claim challenges BLM's failure to ensure the humane treatment of excess
2  wild horses removed and scheduled for removal from the Owyhee Complex. The
3  question, then, is whether this challenge is reviewable under the APA.

4  The APA allows for suits to be filed by "[a] person suffering legal wrong because
5  of agency action, or adversely affected or aggrieved by agency action within the
6  meaning of a relevant statute." 5 U.S.C. § 702. Where, as here, "no other statute
7  provides a private right of action, the 'agency action' complained of must be '*final* agency
8  action.'" *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 61-62 (2004) (*quoting* 5
9  U.S.C. § 704). Courts have "recognized that the term [agency action] is not so all-
10 encompassing as to authorize . . . judicial review over everything done by an
11 administrative agency." *Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 800-01 (9th Cir.
12 2013) (alteration in original) (*quoting Fund for Animals, Inc. v. U.S. Bureau of Land
13 Mgmt.*, 460 F.3d 13, 19 (D.C. Cir. 2006) (internal quotation marks omitted).

14 The main problem with the first claim for relief is Plaintiff's conflicting allegations
15 under the APA. The SAC defines the agency action as "the failure to act" under 5 U.S.C.
16 § 551(13) and seeks judicial review under § 706(2) by alleging that Defendants' conduct
17 violates § 706(2)(A) and/or (D). (Dkt. no. 82 ¶ 100.) However, under § 706(1), the relief
18 the APA provides for a failure to act is that "[t]he reviewing court shall . . . compel agency
19 action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *Norton*, 542 U.S.
20 at 62. In contrast, § 706(2) provides for judicial review to challenge a completed agency
21 action. *See Or. Natural Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1119 (9th
22 Cir. 2010) (offering the following example to demonstrate this distinction: "if we hold an
23 EIS inadequate under the § 706(2)(A) standard because it 'entirely failed to consider an
24 important aspect of the problem,' and direct the agency to redo it, we are reviewing the
25 validity of the final agency action that *was* taken, not — as in [*Norton*] — demanding

---

*(...fn. cont.)*
EA in providing for humane handling of wild horses, it is duplicative of the third claim for relief.

6

that the agency take some action that it has *not* taken") (citation omitted)); *Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 681 n.10 (9th Cir. 2007) (distinguishing *Norton'*s analysis of the court's authority to compel agency inaction under § 706(1) from the court's authority to review "final agency action" under § 706(2)). Perhaps recognizing this distinction, Plaintiff fails to clarify which APA provision is the basis for her first claim for relief. In her opposition to dismissal of the first claim, Plaintiff suggests she seeks relief under § 706(1) (dkt. no. 74 at 5:22-23), but then argues that she seeks relief solely under § 706(2) (*id.* at 12-13). Because the first claim for relief clearly states that the agency action is BLM's "failure to act," the Court will construe this claim as seeking relief under § 706(1). (*See* dkt. no. 82 ¶ 100.)

Defendants rely on *Norton* to support their argument that the action challenged here — BLM's failure to ensure humane gathers and removals — does not amount to a discrete agency action that a court may compel under § 706(1). In *Norton,* the Supreme Court found that the definition of "failure to act" "is in [its] view properly understood as a failure to take an *agency action*—that is, a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)," which lists five categories of agency action: "agency rule, order, license, sanction or relief." 542 U.S. at 62-63. The Court also found that under the APA, an agency can only be compelled to act if "action is legally *required.*" *Id.* at 63. "Thus, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *Id.* at 64.

The Court then applied these two principles to determine whether a court's authority to compel agency action under § 706(1) extends to BLM's stewardship of public lands under the Federal Land Policy and Management Act of 1976 ("FLPMA"), which "established a policy in favor of retaining public lands for multiple use management." *Id.* at 58 (internal quotation marks omitted). BLM had identified certain federal lands as "wilderness study areas (WSAs)," but Congress had not yet decided whether to protect the WSAs as wilderness. *Id.* at 58-59. Until Congress made that decision, BLM was

required to manage the WSAs "in a manner so as not to impair the suitability of such areas for preservation as wilderness." *Id.* at 59 (internal quotation marks omitted). BLM adopted a "land use plan" for certain WSAs that contained provisions allowing for the use of off-road vehicles. *Id.* at 60-61, 65. Southern Utah Wilderness Alliance and other organizations filed an action for declaratory and injunctive relief against BLM for, among other claims, violating FLPMA by allowing degradation in these WSAs, thereby failing to take action "so as not to impair the suitability of [the] areas." *Id.* at 59, 61-62. The Court found that federal courts lack authority under the APA to compel such broad agency compliance, which would "inject[] the judge into day-to-day agency management." *Id.* at 67. The Court offered the following example of an improper suit to compel general agency compliance: "a plaintiff might allege that the Secretary had failed to 'manage wild free-roaming horses and burros in a manner that is designed to achieve and maintain a thriving natural ecological balance.'" *Id.* (*quoting* 16 U.S.C. § 1333(a)). The Court concluded that "[t]he prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with such congressional directives is not contemplated by the APA." *Id.*

Relying on the *Norton* Court's cited example, Defendants argue that Plaintiff seeks essentially the same general agency compliance with the Wild Horse Act's mandate that BLM ensure humane gathers and removals of excess wild horses. The Court agrees. The allegations here mirror the cited example in that Plaintiff alleges that BLM's management of wild horses fails to ensure their humane treatment. The action that Plaintiff contends BLM has failed to take — ensuring the humane capture and removal of excess wild horses in compliance with the Wild Horse Act — does not amount to a discrete agency action for which judicial review is available under § 706(1). Plaintiff's first claim for relief is therefore dismissed.

### 2. Second Claim for Relief

Defendants argue that the second claim for relief seeks declaratory relief based on the allegations in Plaintiff's first claim and should be dismissed as duplicative.

Plaintiff's response, as best as the Court can discern, appears to concede that the second claim is duplicative. Plaintiff's second claim is dismissed as duplicative.

### 3. Fourth Claim for Relief

Plaintiff's fourth claim for relief alleges infringement of her First Amendment rights to have qualified access to, and to report on, government activities. Defendants argue that the fourth claim fails to satisfy the *Iqbal* pleading standard. The Court agrees.

The parties do not dispute that in the Ninth Circuit, the two-part balancing test for qualified right of access established in *Press-Enterprise Co. v. Superior Court* (*Press-Enterprise II*), 478 U.S. 1, 8-9 (1986), extends to a claim of qualified right of access in the context of wild horse gathers conducted by BLM. *See Leigh v. Salazar*, 677 F.3d 892, 897-900 (9th Cir. 2012). "First, the court must determine whether a right of access attaches to the government proceeding or activity by considering 1) 'whether the place and process have historically been open to the press and general public' and 2) 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Id.* at 898 (*quoting Press-Enterpise II*, 478 U.S. at 8-9). If the court determines that a qualified right of access exists, then the second part of the test focuses on the government's burden to demonstrate "'an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* (*quoting Press-Enterpise II*, 478 U.S. at 9).

As best as the Court can determine in reviewing the SAC, Plaintiff appears to rely on allegations that Defendants plan to prevent public access to observe "roundup activity occurring as bait / water trap operations in the Owyhee Complex beginning with the Snowstorm HMA roundups" to support this claim. (Dkt. no. 82 at 22.) Based on this allegation, Plaintiff seems to claim that public access is denied when Defendants utilize the bait and trap operations. (*Id.* at 22, 48.) Assuming that the "process" is the "bait and trap operations," Plaintiff fails to allege that such process has "historically been open to the press and general public" and that public access plays a "significant positive role" in

///

this particular "process."[4] But the fact that the Court is left to surmise as to the allegations supporting this claim underscores the insufficiency of Plaintiff's pleadings. Because the SAC does not permit the Court to infer more than the mere possibility of misconduct, Plaintiff has "alleged — but [she] has not shown — that the [she] is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks omitted).

### 4.   Amendment

Plaintiff has requested leave to amend. (Dkt. no. 74 at 13.) The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of [the] amendment." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Because it is not clear from the allegations in the SAC that amendment would be futile, the Court grants leave to amend Plaintiff's fourth claim for relief.

If Plaintiff chooses to amend her fourth claim for relief, Plaintiff is advised that an amended complaint supersedes the original complaint and, thus, the amended complaint must be complete in itself.[5] LR 15-1(a); *see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (holding that a plaintiff is not required to reallege claims dismissed with prejudice in a subsequent amended complaint to preserve them for appeal). Plaintiff's amended

---

[4]Plaintiff alleges that BLM allowed public access to observe "wait/water trap operations" at three different roundups within the last year. (Dkt. no. 82 at 50.) Even assuming this allegation supports historical access, Plaintiff fails to allege that public access plays a significant role in these operations.

[5]Among other deficiencies, the SAC improperly refers to and relies on allegations alleged in the original complaint. (Dkt. no. 82 at ¶ 34.)

complaint must contain all claims, defendants, and factual allegations that Plaintiff wishes to pursue in this lawsuit.

### IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determined that they do not warrant discussion as they do not affect the outcome of the Motion.

It is ordered that Defendants' Motion for Partial Dismissal (dkt. no. 68) is granted. Plaintiff is granted leave to amend her fourth claim for relief as long as she does so within thirty (30) days from the date of this Order. Failure to file an amended complaint will result in dismissal of Plaintiff's fourth claim for relief with prejudice and this action will proceed on Plaintiff's sole remaining third claim for relief.

DATED THIS 22nd day of September 2014.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE